CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 12 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **CHARLIE GRANT STEPHENS,** | ) | CASE NO. 7:18CV00172 |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **SGT. BYRD, ET AL.,** | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| **Defendants.** | ) | |

The plaintiff, Charlie Grant Stephens, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. Stephens alleges that after his transfer from one jail to another, a jail official discriminated against him because of his race by refusing to return his Bible and legal papers, and other officials failed to retrieve them for him. After review of the record, the court concludes that several of Stephens' submissions, ECF Nos. 38, 49, 50-53, must be liberally construed, jointly, as amendments to Stephen's allegations. While such piecemeal construction of the complaint is not consistent with the Federal Rules of Civil Procedure, in light of the plaintiff's pro se status, the court will grant these amendments and consider his allegations as presented in all of his filings. See, e.g., Erickson v. Pardus, 551 U.S. 89, 90-95 (2007). In so doing, the court concludes that the defendants are entitled to summary judgment.

I.

Taking Stephens' amended complaint in the light most favorable to him, he alleges the following sequence of events. From January 2017 to January 2018, Stephens was incarcerated at the Western Virginia Regional Jail ("WVRJ"). The WVRJ chaplain provided Stephens with a "Life Recovery Bible," a specially designed version to help him reconnect to God while also helping him in his recovery from substance addictions. Verif. Brief. 2, ECF No. 50.

In January 2018, Stephens and Antwain Strange, an African American inmate who had also received a Life Recovery Bible while at WVRJ, were transferred to a New River Valley Regional Jail ("NRVRJ") facility. On January 10, 2018, both Strange and Stephens asked Sergeant ("Sgt.") Byrd for permission to retrieve their Bibles and legal papers from their personal property. Byrd refused. Later, Byrd allowed Strange to collect his property items, including his Life Recovery Bible. Stephens renewed his request to recover his Bible and other property items, but Byrd refused, allegedly because of Stephens' race. Captain Murphy later allegedly agreed with Stephens that Byrd had likely returned Strange's Bible because of his race.[1]

In January 2018, Stephens also asked Sgt. Hall for return of his Bible and legal papers. Hall said that he was not allowed to have them. In January, and again in February 2018, Stephens asked Captain Murphy for his Bible and legal papers. Murphy said he would bring the items to Stephens soon, but failed to do so. Compl. 4, ECF No. 1; Am. Compl. 4, ECF No. 17. Stephens also asked Sgt. Nowers, who said that he would "look into it, he never did." Am. Compl. 3, ECF No. 17. When Stephens asked Nowers again in February 2018, the sergeant said, "You're not going to get it (bible), so fu**ing get over it." Id.

In February 2018, Stephens also told Captain Fleeman about his transfer and his desire to have his Bible and papers. Fleeman said he would "check on it and get back to" Stephens. Brief 9, ECF No. 38. He did not. When Stephens asked Sgt. McNeily for return of his Bible and legal papers, the sergeant said that he could have the items back. He told Stephens to send him a written request, and he would have the items returned that same night. Stephens wrote the request, but never received a response.

---

[1] On August 1, 2018, Stephens told Captain Murphy about Byrd's actions—denying Stephens his Bible, while allowing Strange to retrieve his Bible of the same type. Murphy stated, "'You know why he got his and you didn't get yours.' Stephens replied 'Yes, because he's black.' Capt. Murphy nodded in agreement." Verif. Brief 2, ECF No. 53.

Stephens was not provided with a copy of the NRVRJ Inmate Handbook until April 2018. Thus, from January 10 to mid-April 2018, he did not know that he could request a donated Bible from the prison library. When he verbally asked officers for return of his Bible, no one told him about how to ask for a donated one. After he received an inmate handbook and learned there was a grievance procedure, he asked, unsuccessfully, for grievance forms. Stephens also followed the first step of the grievance procedure, by filing numerous written request forms asking for return of his Bible and papers. He never got a response.

Stephens filed his initial § 1983 complaint in April 2018, suing only the jail. After the court notified him that the jail was not a proper defendant under § 1983, he filed an amended complaint that misjoined many claims. The court notified him of this problem, and in July 2018, he filed a second amended complaint, naming these officers as defendants: Byrd, Hall, McNeily, Nowers, Fleeman, and Murphy. Stephens alleges two constitutional claims: (1) the defendants deprived him of a Bible, in violation of his First Amendment right to free exercise of his religious beliefs; and (2) Byrd denied him equal protection by discriminating against him because of his race, in violation of the Fourteenth Amendment. He seeks only monetary damages. On July 18, 2018, the court served the case on the defendants.

In late May 2018, the NRVRJ chaplain advised Stephens that jail policy permitted him to have his Bible in his cell. The chaplain told Stephens to write a request, and he would check into it. The chaplain never received that request.

On August 1, 2018, Murphy asked Stephens why the list of defendants in the lawsuit included Murphy. He told Stephens, "I thought I gave your bible back to you, it was missing the cover and you asked why." Brief 12, ECF No. 38. Stephens said no one had returned his Bible.

Murphy returned the Bible to Stephens on August 8, 2018. In September 2018, Stephens was transferred to a state prison facility.

The defendants have filed a motion to dismiss, or in the alternative, motion for summary judgment, supported by affidavits. They argue that Stephens failed to exhaust administrative remedies regarding his claims before filing this lawsuit, as required under 42 U.S.C. § 1997e(a), and that they are entitled to qualified immunity as to his claims for damages. Stephens has responded to their motion, making it ripe for disposition.[2]

II.

A. The Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 553-63 (2007). "[T]he complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).[3] The defendants have supported their motion to dismiss with affidavits on which the court has relied in reviewing their arguments on exhaustion and qualified immunity.

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

---

[2] Weeks after filing his response to the defendants' motion, Stephens filed discovery requests with the court. The magistrate judge granted the defendants' motion to stay discovery, pending the court's decision on the defendants' motion. Stephens has failed to demonstrate that any of the discovery information he requested was necessary to his response to the defendants' arguments of exhaustion and qualified immunity, as required. Fed. R. Civ. P. 56(d).

[3] The court has omitted internal quotation marks, alterations, and citations here and elsewhere throughout this opinion, unless otherwise noted.

4

Fed. R. Civ. P. 12(d). Accordingly, the court will consider the defendants' motion under the summary judgment standard.[4]

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

B. The Exhaustion of Administrative Remedies

A prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. 42 U.S.C. § 1997e(a). This exhaustion requirement is "mandatory." Ross v. Blake, __U.S.__, 136 S. Ct. 1850, 1856 (2016). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. See Woodford v. Ngo, 548 U.S. 81, 90-94 (2006). Whether or not the particular form of relief the inmate desires is available under the jail's administrative procedure, he must, nevertheless, exhaust properly all available remedies under that procedure before bringing a civil action in this court. Id. at 85.

The defendants bear the burden of proving the affirmative defense that Stephens failed to exhaust available administrative remedies regarding his claims before filing suit. Jones v. Bock,

---

[4] As required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court warned Stephens that judgment might be granted for the defendants if he did not respond to their motion by filing affidavits or other documents contradicting their arguments and evidence. See Notice, ECF No. 26. Stephens has submitted verified responses to the defendants' motion, ECF No. 38, and other briefs in response, to which the defendants have replied.

5

549 U.S. 199, 212 (2007). Once they have done so, Stephens may yet escape summary judgment under § 1997e(a) if he states facts showing that the remedies under the established grievance procedure were not "available" to him. Ross, 136 S. Ct. at 1859 (noting that circumstances making prison grievance procedures unavailable "will not often arise"). Generally, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

The NRVRJ has an established inmate grievance procedure. See Mem. Supp. Mot. Dism. Ex. 1, Winston Decl. ¶¶ 6-7, ECF No. 25-1.

> A jail inmate who wishes to submit a grievance must first submit an inmate request form stating his complaint and requesting a grievance form. In response to the inmate request, a shift commander meets with the inmate to attempt to informally resolve the complaint. If that attempt is unsuccessful, the shift commander issues the inmate a grievance form. That initiates the NRVRJ's formal grievance process.
>
> The NRVRJ has a three-step formal grievance procedure to address inmate complaints. An inmate first submits a grievance form detailing his complaint. An administrator responds to the grievance. If the inmate is not satisfied with the administrator's response, the inmate can appeal to the deputy superintendent. The deputy superintendent responds to the appeal. If the inmate is still not satisfied, the inmate can appeal to [the superintendent]. [His] response is final. Once [the superintendent has] responded to the inmate's appeal, [his] administrative remedies at the NRVRJ are exhausted.

Id. There are separate forms for inmate requests and inmate grievances. Superintendent Winston, a defendant in this action, maintains records of every inmate request or grievance form filed at the NRVRJ. Winston's records do not reflect that Stephens ever filed any request form or grievance form about his claims that he was the victim of race discrimination and that jail officials had repeatedly refused or failed to return his Bible. On this evidence, the defendants argue that Stephens failed to comply with § 1997e(a) before filing his § 1983 claims, and that his court action should be dismissed accordingly.

"Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Woodford v. Ngo, 548 U.S. 81, 89 (2006). Stephens did not give NRVRJ officials that opportunity regarding his race discrimination claim against defendant Byrd. In response to the defendants' motion, he has not alleged or provided any evidence that he ever filed a request form or asked for a grievance to lodge his claim with officials that he had experienced racial discrimination at the jail. Without evidence that Stephens even attempted to utilize the jail's grievance procedure on this issue, he has no viable claim that the procedure was unavailable to him to raise the issue. Accordingly, the court will grant the motion for summary judgment under § 1997e(a) as to his unexhausted equal protection claim. Because Stephens is no longer confined at the jail, the court will dismiss this claim with prejudice.

Stephens states in verified pleadings, however, that as required by the grievance procedure, he filed request forms many times between January and August 2018, asking for the return of his Bible. He allegedly did not receive any response to his request forms. He also states that he asked for, but was not provided with, a grievance form for this issue. Finding material disputes of fact as to whether jail officials' actions made the grievance procedure unavailable to Stephens with regard to his Bible, the court cannot grant summary judgment under § 1997e(a) as to his religious rights claim.

## C. Qualified Immunity

The doctrine of qualified immunity shields government officials from civil damages liability "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, __U.S.__, 136 S. Ct. 305, 308 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, (2009)). "To overcome this shield, a plaintiff must demonstrate that: (1) the defendant violated the plaintiff's constitutional rights, and (2) the right in question was clearly established at the time of the alleged violation." Adams v. Ferguson, 884 F.3d 219, 226 (4th Cir. 2018); see also Crouse v. Town of Moncks Corner, 848 F.3d 576, 583 (4th Cir. 2017). In short, "[t]he principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Pearson, 555 U.S. at 244.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). "In order to state a claim for violation of rights secured by the [First Amendment] Free Exercise Clause, an inmate, as a threshold matter, must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." Wilcox v. Brown, 877 F.3d 161, 168 (4th Cir. 2017).

> [A] "substantial burden" is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand.

Lovelace v. Lee, 472 F.3d 174, 182 (4th Cir. 2006). Prison practices do not substantially burden an inmate's rights if they merely make his religious exercise more expensive, inconvenient, or even difficult. Calvary Christian Ctr. v. City of Fredericksburg, 800 F. Supp. 2d 760, 774 (E.D.

Va. 2011) (citing Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007) (unpublished)); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004) (holding that substantial burden must "place more than an inconvenience on religious exercise"). Moreover, because "the Constitution does not guarantee due care on the part of state officials," an officer's inadvertent or negligent deprivations of an inmate's ability to practice his religious beliefs do not present a constitutional claim. Lovelace, 472 F.3d at 194.

Stephens has stated that he is a Christian and that without a Bible for several months at NRVRJ, he was "unable to practice his religion" from January 1, 2018, until his Bible was returned to him on August 8, 2018. Am. Compl. 4, ECF No. 17. In support of their motion, the defendants provide evidence that "[u]nder NRVRJ policy, inmates are allowed to keep soft-covered books in their cells, including Bibles. The NRVRJ maintains soft-covered Bibles that are available at no cost to inmates upon their request." Mem. Supp. Mot. Ex. 1, Winston Aff. ¶ 4, ECF No. 25-1. Superintendent Winston "maintain[s] records of every inmate request" form filed by NRVRJ inmates. Id. at ¶ 5. According to his records, "Stephens never put in a request to receive one of the Jail's bibles." Id. at ¶ 4. Stephens does not contradict the defendants' evidence or allege that he ever asked anyone, verbally or in writing, for a Bible (other than his own) to further his religious practice.

As an initial matter, Stephens has no § 1983 claim based on alleged violations of jail policy. Section 1983 vindicates only rights protected by the Constitution or federal laws, not state laws or jail policies. Rehberg v. Paulk, 566 U.S. 356, 361 (2012). Thus, even if jail officials' alleged refusals or failures to return Stephens' Bible could be considered violations of jail policy, they are

9

not actionable as such under § 1983.[5] See United States v. Caceres, 440 U.S. 741, 752-55 (1978); Riccio v. Cty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990).

Stephens' allegations also suggest that many of the defendants intended to follow jail policy and retrieve his Bible, but they failed to do so only out of oversight or confusion of one inmate with another. Such actions are nothing more than negligence and, thus, cannot support a claim that they deprived Stephens of constitutional rights. Lovelace, 472 F.3d at 194.

Stephens also concedes that he had no constitutional right to possess his own Bible while in jail, and the court agrees. See, e.g., Nicholson v. Lolley, No. 96-553-P-S, 1999 U.S. Dist. LEXIS 15534 at *60 (S.D. Ala. Aug. 19, 1999) (holding that "Plaintiff has no constitutional right to have the use of his own personal . . . Bible while incarcerated."). Moreover, Stephens has not demonstrated that he suffered a substantial burden on his religious rights while he was denied possession of his personal Bible at NRVRJ. He may have preferred his personal copy of the "Life Recovery Bible" to assist him with his struggle to overcome his addictions. However, he has not identified any religious difference between that Bible and other Bibles, nor has he identified any Christian practice he could not have exercised just as well with a donated Bible that jail officials would have provided to him upon request. Yet, over the eight-month period before officials returned his personal Bible, Stephens never requested a Bible other than his own. There is also no evidence that he attempted to purchase another Bible.

Stephens simply has not stated facts showing that the jail policy or jail officials' actions pressured him to violate his religious beliefs or to abandon any religious precept. Lovelace, 472 F.3d at 182. At the most, the defendants' failure to return Stephens' personal Bible required him to make extra effort to regain that Bible or to take steps to obtain another Bible. Mere

---

[5] The defendants have all filed declarations stating that if Stephens had asked them to retrieve his Bible, they would have done so.

10

inconvenience and minor expense cannot constitute a substantial burden for purposes of a First Amendment claim. Living Water Church of God, 258 F. App'x at 739. Because Stephens fails to demonstrate that the defendants' actions or policies placed a substantial burden on his religious practice, he has not shown that they violated his First Amendment rights. Furthermore, the defendants could reasonably believe that their conduct did not deprive Stephens of his ability to practice his religion. Rather, they could reasonably have relied on the jail's policy of providing inmates with a Bible upon request as sufficient protection of Stephens' religious need for a Bible. On this record, the court concludes that the defendants are entitled to summary judgment on the ground of qualified immunity against Stephens' claims for monetary damages on his First Amendment claim.

III.

For the reasons stated, the court will grant the defendants' motion for summary judgment. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 12th day of September, 2019.

*/s/ Conrad*
Senior United States District Judge

11